IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HSK

v.                                    Civil No. CCB-12-3373

UNUMPROVIDENT CORPORATION,
ET AL.

## MEMORANDUM

Now pending before the court is a motion for partial summary judgment on contract interpretation, filed by plaintiff HSK against defendants Unum Group (f/k/a UnumProvident Corporation) and Provident Life and Accident Insurance Company (collectively, "defendants"). This motion arises out of a dispute over whether the terms of HSK's disability insurance policy require him to submit to a mental, psychiatric, or psychological examination as a condition of receiving disability benefits. The issues in this case have been fully briefed, and no hearing is necessary. *See* Local R. 105.6 (D. Md. 2011). For the reasons stated below, HSK's motion for partial summary judgment will be granted, and, to the extent the defendants' opposition is intended to include a renewed motion to compel mental examination (ECF No. 41 at 17), it will be denied.

## BACKGROUND

On February 1, 1995, Provident Life and Accident Insurance Company ("Provident") issued a disability insurance policy (no. 06-338-6114643) to HSK. On June 6, 2011, HSK made a claim for benefits on his policy. (ECF 41-2, Ex. B at 5.) He claimed that, beginning March 10, 2011, he became disabled due to "major depression, [obsessive-compulsive disorder], panic

1

disorder, [attention deficit hyperactivity disorder], phobias, generalized anxiety disorder [and] opioid dependence." (ECF No. 41-1, Ex. A at 2; ECF No. 41-2, Ex. B at 2.) As a result, HSK maintained that he was unable to continue his job as a mortgage business executive. (ECF No. 41-2, Ex. B at 4; ECF No. 2 at 3.)

Provident initially paid monthly benefits to HSK, yet stated that it paid these benefits under a "Reservation of Rights" while the investigation of HSK's claim was pending.[1] (ECF No. 41, Ex. C at 3; ECF No. 9 ¶ 12.) As part of its investigation, Provident requested complete copies of HSK's medical and psychiatric records, documents and employment contracts, and income tax returns. (ECF No. 41 at 2.) After reviewing the submitted documents, on August 10, 2011, Provident requested that HSK undergo a psychiatric independent medical examination ("IME"). (ECF No. 41, Ex. C.) HSK declined the IME, claiming the language of his policy did not provide for such an examination. (ECF No. 41-4, Ex. D at 2.) The policy language at issue was:

> **PHYSICAL EXAMINATIONS**
> We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending.

(ECF No. 40-5, Ex. 3 at 26.)

HSK and Provident could not agree on whether his policy provided for a psychiatric IME, and on November 8, 2011, Provident terminated the insurance benefits. (ECF No. 40-9, Ex. 7 at 3.) Provident asserted that HSK had not provided sufficient information to support to his claim.[2] (*Id.*) HSK then brought a breach of contract action against the defendants in the

---

[1] HSK disputes that the disability insurance policy allowed for such a reservation of rights. (ECF No. 40-1 at 3.) This issue, however, is not currently before the court.
[2] The defendants assert that HSK's failure to submit to the psychiatric IME was only one reason Provident denied his disability benefits claim. (ECF No. 41 at 15–16.) Instead, they claim "the available information in HSK's file did not support the conclusion that [HSK] was unable to

Circuit Court of Maryland for Baltimore City. The defendants removed the action to this court on the grounds of diversity of citizenship.

## STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

---

perform . . . his occupation." (*Id.*) The issue before the court is one of pure contract interpretation, and thus, it is not necessary at this time to determine the reasons why Provident denied HSK's claim.

## ANALYSIS

In Maryland, an insurance contract is construed as any other contract. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. David A. Bramble, Inc.*, 388 Md. 195, 208, 879 A.2d 101, 109 (2005); *see also Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556, 769 A.2d 948, 957 (2001) ("Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer.") (citations omitted). The court "begins [its analysis] with the language employed by the parties." *MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 279, 825 A.2d 995, 1005 (2003). The language is given its "customary, ordinary, and accepted meaning[]." *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 14–15, 852 A.2d 98, 106 (2004); *see also Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 166, 702 A.2d 767, 771 (1997) (stating that the court "analyze[s] the plain language of the [insurance] contract according words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean"). This means the clear language of the contract is controlling, and not "what the parties thought the agreement meant or was intended to mean." *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251, 768 A.2d 620, 630 (2001) (citations and internal quotation marks omitted). Accordingly, the initial question is whether the plain language of HSK's disability insurance policy provides for only physical examinations, and not mental examinations.

Here, the plain language of the policy issued to HSK provides for only physical examinations of the insured. The caption indicates, in bold and capital lettering, that the insured may be required to submit to "**PHYSICAL EXAMINATIONS**." (ECF No. 40-5, Ex. 3 at 26.) Nowhere in the caption or the below text does the policy specify that the insured may be forced to undergo a mental examination. Moreover, although the caption is followed by more general

4

language that the insurer has "the right to have [the insured] examined as often as is reasonable while a claim is pending," this language is limited by the caption. To interpret the contract otherwise would be to "disregard[] a meaningful part of the language of the writing," a result abhorred by the Court of Appeals of Maryland. *See Tomran, Inc. v. Passano*, 391 Md. 1, 14, 891 A.2d 336, 344 (2006) (citation and internal quotation marks omitted); *David A. Bramble*, 388 Md. at 209, 879 A.2d at 109 (citation and internal quotation marks omitted). Accordingly, the defendants' attempt to have the court overlook the "physical examinations" caption does not comport with the repeated instruction of the Court of Appeals of Maryland to consider a contract in its entirety so that effect is given to each clause. *See, e.g.*, *David A. Bramble*, 388 Md. at 209, 879 A.2d at 109; *see also Bushey v. Northern Assurance Co. of Am.*, 362 Md. 626, 631, 766 A.2d 598, 600 (2001) (emphasis added) (citation and internal quotation marks omitted) ("In Maryland, insurance policies, like other contracts, are construed *as a whole* to determine the parties' intentions.").[3]

The defendants' attempt to have the court overlook the "physical examinations" caption is also unsuccessful in light of the fact that the Maryland legislature gives significance to captions in insurance policies. The Maryland legislature regulates captions under the Insurance Article. *See, e.g.*, Md. Code Ann., Ins. § 15-202(d) (stating that "[e]ach provision shall be preceded individually by the applicable caption shown or, at the option of the insurer, by an appropriate individual or group caption or subcaption that the [Maryland Insurance] Commissioner approves"). In particular, a policy form may not "have a title, heading, or other

---

[3] HSK and the defendants disagree over whether and how the contract doctrines of *ejusdem generis* and *expressio (or inclusio) unius est exclusio alterius* apply to the insurance policy at issue. Because the court determines that disregarding the "physical examinations" caption would not comport with the instructions of the Court of Appeals of Maryland to consider a contract as a whole, it is not necessary to decide which party's doctrinal interpretation is correct.

indication of its provisions that is likely to mislead the policyholder or certificate holder." *Id.* § 12-205(b)(3). The Maryland legislature's regulation of captions suggests that captions are important and that they inform the meaning of the provisions that follow.

To support their claim that the "physical examinations" caption does not alter the meaning of the language below it, the defendants cite two Fourth Circuit cases. The cases indicate that the title of a statute, or the heading of a section, may not create ambiguity in the statute where none would otherwise exist and cannot limit the plain meaning of the statutory text. *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 370 n.11 (4th Cir. 2012); *United States v. Clawson*, 650 F.3d 530, 536 (4th Cir. 2011). The Fourth Circuit cases, however, do not apply to the language at issue here, which appears in a disability insurance contract rather than a statute. Furthermore, even if the Fourth Circuit cases applied to the disputed insurance policy language, they would not be binding authority, as this diversity action is governed by Maryland state law.

Giving the caption and the accompanying text their ordinary meaning, the court determines that the term "physical examinations" does not encompass mental examinations. This conclusion is supported by the fact that Maryland law has long distinguished between physical and mental examinations. For example, Maryland Rule 2-423 distinguishes between mental and physical examinations in civil discovery, as does Maryland Rule 11-105. Similarly, a number of Maryland statutory provisions recognize the difference between physical and mental examinations. *See, e.g.*, Md. Code Ann., Health Occ. § 11-206; *id.* § 13-316.1(a); Md. Code Ann., Transp. § 16-110(c). Therefore, pursuant to Maryland law, physical examinations do not include mental examinations.

The defendants rely on *Five Boro Psychological Services, P.C. v. AutoOne Insurance Co.*, 22 Misc. 3d 978 (N.Y. Civ. Ct. 2008), to refute that the "physical examinations" language excluded mental examinations as a condition of HSK receiving benefits. Reliance on this case, however, is inapposite. In *Five Boro Psychological Services, P.C.*, the court interpreted an insurance policy stating "*Medical Reports*. The insured shall submit to physical examinations by *physicians* we select when and as often as we may reasonably require." *Id.* at 979 (emphasis added). To begin, the court's analysis centered on whether "physicians"—a term not at issue in the present case—included other healthcare providers such as psychologists. *See id.* at 979–80. In addition, in interpreting the term "physicians," the court relied on applicable New York law, which defined an "[i]ndependent medical examiner" as "a physician, surgeon, chiropractor or psychologist who is authorized to conduct independent medical examinations . . . ." *Id.* at 980–81 (citing N.Y. Comp. Codes R. & Regs. tit. 12 § 300.2(b)(5)). New York law does not apply to the present case, and the New York court's analysis holds little persuasive value in analyzing whether HSK's insurance policy required him to submit to a mental examination.

Even if the disputed provision of the contract were found to be ambiguous, the result of the analysis would be the same. If the court determines that the terms of an insurance contract are ambiguous, the court may examine extrinsic sources to decide the meaning of the terms at issue. *Callaway*, 375 Md. at 279, 825 A.2d at 1005. Moreover, "under general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument*." *Dutta*, 363 Md. at 557, 769 A.2d at 957 (emphasis in original) (internal quotation marks omitted); *see also Bushey*, 362 Md. at 632, 766 A.2d at 601.

Thus, assuming for present purposes that HSK's policy is ambiguous, the court may consider extrinsic sources—namely, previous insurance policies issued by the defendants—to determine that the policy at issue is limited to physical examinations. The defendants are incorrect that the parol evidence rule bars consideration of the previous policies. Here, the previous insurance policies do not "vary, alter, or contradict" the clear meaning of the insurance policy at issue. *See Admiral Builders Sav. & Loan Ass'n v. South River Landing, Inc.*, 66 Md. App. 124, 128, 502 A.2d 1096, 1098 (1986) (citation and internal quotation marks omitted). Notably, the defendants do not suggest any way in which the previous policies vary, alter, or contradict HSK's insurance policy, providing only the sweeping conclusion that they "must be excluded as parol evidence." (ECF No. 41 at 14.) The previous policies instead clarify that HSK's insurance policy is limited to physical examinations. Specifically, the previous policies make clear that the defendants use the caption "Physical and Mental Examinations" to condition receipt of benefits on the insured submitting to either type of examination. (*See* ECF No. 42-1, Ex. 1 at 3 (providing for both "Physical and Mental Examinations" of the insured); ECF No. 42-2, Ex. 2 (same); ECF No. 42-3, Ex. 3 at 3 (same); ECF No. 42-4, Ex. 4 at 3 (same); ECF No. 42-5, Ex. 5 at 3 (same); ECF No. 42-7, Ex. 7 at 3 (same); ECF No. 40-15, Ex. 13 at 2 (same); *see also* ECF No. 42-6, Ex. 6 at 3 (stating that the insurer may require the insured to "undergo a medical examination, functional capacity examination and/or psychiatric examination"); *see also* ECF 40-10, Ex. 8 at 3 (indicating that the insurer may have the insured examined "by specialists . . . including physicians, psychologists, psychiatrists, or vocational evaluators"); ECF 40-11, Ex. 9 at 3 (same); ECF 40-12, Ex. 10 at 3 (same); ECF 40-13, Ex. 11 at 3 (same)). Maryland courts have agreed that this is an appropriate use of parol evidence. *See, e.g.*, *Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, -- A.3d --, 2013 WL 4461537, at *8 (Md. 2013)

(citations omitted) (suggesting that the court may consider parol evidence to clarify the meaning of ambiguous contractual language); *Calomiris v. Woods*, 353 Md. 435, 447, 727 A.2d 358, 369 (1999) (same); *Anderson Adventures, LLC v. Sam & Murphy, Inc.*, 176 Md. App. 164, 179, 932 A.2d 1186, 1194 (2007) (citation omitted) (same).

The defendants assert that the Insurance Article of the Maryland Code prevented them from altering the "physical examinations" language in HSK's policy. Section 15-216 of the Insurance Article states that:

> Each policy of health insurance shall contain the following provision:
> "Physical examinations and autopsy: The insurer at its own expense shall have the right and opportunity to examine the person of the insured when and as often as it may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death where it is not forbidden by law."

Md. Code Ann., Ins. § 15-216.[4]

The defendants' argument is belied by the fact that a number of their previous policies contained altered language in the caption. (*See* ECF No. 42-1, Ex. 1 at 3 (providing for both "Physical and Mental Examinations" of the insured, as opposed to "Physical examinations and autopsy"); ECF No. 42-2, Ex. 2 (same); ECF No. 42-3, Ex. 3 at 3 (same); ECF No. 42-4, Ex. 4 at 3 (same); ECF No. 42-5, Ex. 5 at 3 (same); ECF No. 42-7, Ex. 7 at 3 (same) ECF No. 40-15, Ex. 13 at 2 (same)).[5] Indeed, even the language in the policy issued to HSK deviated from the language in

---

[4] According to the defendants, at the time HSK's policy was issued, the statute varied slightly in wording but not in substance. (ECF No. 41 at 6.)

[5] The defendants argue that the previous policies are distinguishable from the policy at issue because they were not issued in 1995, the year of HSK's policy. (ECF No. 41 at 14–15.) They also point out that some of the previous policies are group disability insurance policies, whereas HSK's policy is an individual policy. (*Id.* at 15.) As to the first argument, the defendants do not explain why it matters that the other policies were not issued in 1995. To support their claim, they merely cite *Hashmi v. Bennett*, which explains that parol evidence must be used to elucidate the parties' intent "when the contract was entered." 188 Md. App. 434, 453, 982 A.2d 818, 829 (2009), *aff'd*, 416 Md. 707, 7 A.3d 1059 (2010); *see also Dumbarton Improvement Ass'n, Inc.*, 2013 WL 4461537, at *6. While that principle is correctly cited, *Hashmi* does not limit

the Insurance Article; HSK's policy made no mention of autopsy. (ECF No. 40-5, Ex. 3 at 26.) The Insurance Article contemplates such modifications, providing that "[t]he insurer may substitute a corresponding provision with different wording . . . if the corresponding provision is approved by the Commissioner and is not less favorable in any respect to the insured or beneficiary." Md. Code Ann., Ins. § 15-202(b). Thus, the Insurance Article did not prevent the defendants from modifying the language of HSK's insurance policy.

Finally, to the extent the defendants suggest a disability insurance contract may not limit the insurer's ability to examine the insured, this argument cannot stand. The defendants cite *Huntt v. State Farm Mutual Automobile Insurance Co.*, 72 Md. App. 189, 527 A.2d 1333 (1987), for the proposition that consenting to an IME is a condition to the payment of insurance benefits. (ECF No. 41 at 8.) This interpretation, however, is not accurate. In *Huntt*, the court determined that an insured had to submit to an IME when the insurance policy provided that an insured making a claim must "be examined by physicians chosen and paid by [State Farm] as often as [it] reasonably may require." 72 Md. App. at 191, 527 A.2d at 1333–34. *Huntt* therefore indicates that an IME is a condition of receiving insurance benefits when the policy so states. Similarly, the defendants' reliance on *Curry v. Trustmark Insurance Co.*, 2013 WL 3716413 (D. Md. 2013), is misguided. In *Curry*, the policy at issue included the caption "physical examinations" and the following sentence: "At Our expense, We can have a Physician examine

---

admissible parol evidence to that developed at precisely the same time as the contract at issue. Notably, some of the previous policies closely predated 1995. (*See* ECF No. 40-10, Ex. 8; ECF No. 40-11, Ex. 9; ECF No. 40-12, Ex. 10; ECF No. 40-13, Ex. 11.) As to the second argument, the defendants identify only four group disability insurance policies included as exhibits in HSK's motion for partial summary judgment. (*Id.*) HSK provided as exhibits more individual insurance policies. (See ECF No. 42-1, Ex. 1; ECF No. 42-2, Ex. 2; ECF No. 42-3, Ex. 3; ECF No. 42-4, Ex. 4; ECF No. 42-5, Ex. 5; ECF No. 42-6, Ex. 6; ECF No. 42-7, Ex. 7.) Accordingly, even if the court overlooked the group disability insurance policies, the defendants' other policies still clarify that HSK's policy required only physical examinations.

You as often as reasonably necessary during Your claim." *Id.* at *1. The *Curry* court reasoned that, when the plaintiff refused to submit to a physical examination, the insurer had a right under the policy to deny benefits. *Id.* at *4. In short, *Huntt* and *Curry* stand for the unremarkable notion that an IME is a condition of receiving insurance benefits when the insurance policy provides that this is the case; they do not indicate an inherent right to an IME, regardless of the insurance policy language.

## CONCLUSION

For the reasons stated above, HSK's motion for partial summary judgment on contract interpretation will be granted. The defendants may not deny benefits on the ground that HSK failed to submit to a psychiatric examination. A separate order follows.

September 19, 2013 /s/
Date Catherine C. Blake
United States District Judge